UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



GURIM SINGH,

    Petitioner,

v.

WILLIAM BARR, et al.,

    Respondents.

19-CV-1208
DECISION AND ORDER

## **INTRODUCTION**

The United States Department of Homeland Security, Immigration and Customs Enforcement has detained the petitioner, Gurim Singh, since June 7, 2018—nearly eighteen months. Docket Item 3-2 at 2-3. On September 9, 2019, Singh filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the Buffalo Federal Detention Facility in Batavia, New York. Docket Item 1. On October 28, 2019, the respondents answered the petition, Docket Items 3, 4, and on November 19, 2019, Singh replied, Docket Item 6.

Because Singh is an "arriving alien," this Court disagrees that the Due Process Clause requires the relief that he demands. Specifically, because Singh has received a bond under hearing under 8 U.S.C. § 1226(a), this Court disagrees that he has not received the "rigorous review" necessary to sustain his detention under 8 U.S.C. § 1225(b). *See Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 392 (3d Cir. 1999). Singh's petition therefore is denied.

## FACTUAL BACKGROUND

The following facts, taken from the record, come largely from filings with the United States Department of Homeland Security, Immigration and Customs Enforcement ("DHS"). Singh is a native and citizen of India. Docket Item 1 at 6. On June 7, 2018, agents of the United States Border Patrol detained Singh near the Border Patrol Station in Chula Vista, California, within a day of his illegally entering the United States. Docket Item 3-2 at 2-3. Singh admitted that he did not have appropriate immigration documents that would allow him to enter or remain in the country. *Id.* at 2. On June 9, 2018, DHS therefore served Singh with a Form I-860 "Notice and Order of Expedited Removal." *Id.* at 4. When Singh claimed a credible fear of removal to India, his case was referred to an asylum officer, and he was placed in DHS custody. *Id.* at 1, 3.

On August 20, 2018, DHS served Singh with a Form I-862 "Notice to Appear," charging that he was subject to removal under 8 U.S.C. §§ 212(a)(7)(A)(i)(I) and 212(A)(6)(A)(i). *Id.* at 6. On August 24, 2018, DHS "determined that, pending a final administrative determination in [his] case," Singh would be detained by DHS. *Id.* at 8. After Singh asked that an immigration judge ("IJ") review this determination, *id.*, an IJ conducted a bond hearing and denied Singh's request for a change in custody status on October 4, 2018. *Id.* at 9.

That same day, the IJ addressed Singh's potential asylum claim, *id.* at 28-42, and granted Singh a continuance so that he could secure counsel. *Id.* at 41. On October 30, 2018, Singh appeared before the IJ, again without counsel. 46. The IJ set a deadline of November 9, 2018, for Singh to apply for asylum and withholding of

removal. *Id.* at 48. Singh met this deadline, and the IJ scheduled a hearing for December 19, 2018. *Id.* at 12. That hearing later was rescheduled—at Singh's request—for February 19, 2019. *Id.*

On May 3, 2019, the IJ denied Singh's asylum application and ordered that Singh be removed to India. *Id.* at 25. Singh appealed the IJ's decision to the Board of Immigration Appeals ("BIA") on June 5, 2019. Docket Item 3-1 at 4. On October 23, 2019, the BIA denied Singh's appeal. Docket Item 5. Singh appealed the BIA's denial to the Second Circuit on November 13, 2019; he also moved for an emergency stay of removal. *See* Petition for Review of Agency Order, *Singh v. Barr*, No. 19-3764 (2d Cir. Nov. 13, 2019), ECF No. 1; Petitioner's Motion for Emergency Stay of Removal, *Singh v. Barr*, No. 19-3764 (2d Cir. Nov. 13, 2019), ECF No. 4. That appeal and motion are pending. *See Singh v. Barr*, No. 19-3764 (2d Cir. Nov. 13, 2019)

Singh remains in DHS custody at the Buffalo Federal Detention Facility awaiting the Second Circuit's decision. Docket Item 7-2 at 8. He has been in DHS custody for nearly eighteen months.

## DISCUSSION

### I. PETITIONS FOR WRITS OF HABEAS CORPUS

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). The government maintains that Singh's detention is valid under 8 U.S.C. § 1225(b). Singh makes three arguments to the contrary. First, he claims that his continued detention violates his Fifth Amendment right to substantive due process.

3

Docket Item 1 at 18. Second, he argues that his continued detention without "an individualized hearing before a neutral decision maker, [in which the government must establish] that [his] detention is justified by clear and convincing evidence of flight risk or danger, even after consideration [of] whether alternatives to detention could sufficiently mitigate that risk," violates his Fifth Amendment right to procedural due process. *Id.* at 18-19. And third, he claims that "[t]he government's categorical denial of bail to certain non-citizens violates the right to bail encompassed by the Eight[h] Amendment." *Id.* at 19. For the reasons that follow, Singh is not entitled to the relief he seeks.

## II. STATUTORY CONTEXT

This Court begins by considering the statutory basis for Singh's detention. The government argues that Singh is detained under 8 U.S.C § 1225, Docket Item 4 at 5-7, but Singh argues that he is detained under 8 U.S.C. § 1226, Docket Item 1 at 9-10. The Court agrees with the government that Singh's detention is governed by section 1225.

Under section 1225, "an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018) (quoting section 1225(a)(1)). Aliens "encountered [both] within 14 days of entry without inspection and within 100 air miles of any U.S. international land border" fall within this category of applicants for admission. Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877-01, 48879 (Aug. 11, 2004). On the other hand, "[s]ection 1226 generally governs the process of arresting and detaining [aliens present in the country] pending their removal." *Jennings*, 138 S. Ct. at 837 (first alteration in original) (citation omitted).

The government asserts that Sing was apprehended at the United States-Mexico border within a day of his illegal entry. See Docket Item 3-2 at 1-3 (DHS apprehension records). Singh presents no evidence disputing that claim. This Court therefore agrees with the government that Singh is detained under section 1225.[1]

Significantly, section 1225(b)(1) "mandate[s] detention of applicants for admission . . . for 'further consideration of the[ir] application[s] for asylum.'" *Jennings*, 138 S. Ct. at 842 (quoting 8 U.S.C. § 1225(b)(1)). Release from this mandatory detention may occur only in narrowly defined circumstances. Specifically, "[w]ith a few exceptions not relevant here, the Attorney General may 'for urgent humanitarian reasons or significant public benefit' temporarily parole [into the United States] aliens detained under [section] 1225(b)(1)." *Id.* at 844 (quoting 8 U.S.C. § 1182(d)(5)(A)).

The Court accordingly reviews Singh's petition for a writ of habeas corpus in light of this statutory framework.

---

[1] Although neither party has raised the issued, the Court also finds that Singh is not detained under section 1231, which "addresses the 'removal period' for immigrants facing deportation." *Hechavarria v. Sessions*, 891 F.3d 49, 53 (2d Cir. 2018). Singh has petitioned the Second Circuit for review of the BIA's denial and for a stay of his removal. See Petition for Review of Agency Order, *Singh v. Barr*, No. 19-3764 (2d Cir. Nov. 13, 2019), ECF No. 1; Petitioner's Motion for Emergency Stay of Removal, *Singh v. Barr*, No. 19-3764 (2d Cir. Nov. 13, 2019), ECF No. 4. Under DHS's forbearance agreement with the Second Circuit, "DHS will not remove an alien who has requested a stay of removal with a petition for review of an immigration order of removal unless a government motion opposing the stay is granted by the court or the alien's stay motion is otherwise denied." *Sankara v. Whitaker*, 2019 WL 266462, at *4 (W.D.N.Y. Jan. 18, 2019). This Court accordingly has held that until a Second Circuit panel rules on an immigrant's request for a stay of his removal, the "forbearance agreement amounts to a court ordered stay of the removal of the alien." See *Hemans v. Searls*, 2019 WL 955353, at *3 (W.D.N.Y. Feb. 27, 2019); *Sankara*, 2019 WL 266462, at *4. In other words, this Court construes the forbearance agreement as effectively rendering Singh's removal status to be governed by 8 U.S.C. § 1231(a)(1)(B)(ii) (providing that "[i]f [a] removal order is judicially reviewed and if a court orders a stay of the removal of the alien," the removal period does not begin until "the date of the court's final order").

## III. DUE PROCESS

Singh first argues that his continued detention violates the Due Process Clause of the Fifth Amendment. Docket Item 1 at 7, 18-19. For the reasons that follow, the Court disagrees.

The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law." U.S. Const. amend. V. "So called 'substantive due process' prevents the government from engaging in conduct that shocks the conscience, . . . or interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (citations omitted). "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Id.* "This requirement has traditionally been referred to as 'procedural' due process." *Id.*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and narrow nonpunitive circumstances, . . . where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (emphasis in original) (citations omitted). Other than those unique, special, and narrow circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty. That promise stands as one of the Constitution's most vital protections

6

against arbitrary government." *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019).

"Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyler v. Doe*, 457 U.S. 202, 210 (1982); *see also Shaughnessey v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1954) ("It is true that aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."). At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[ ] rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

### A. Substantive Due Process

Singh argues that his detention violates his right to substantive due process. Docket Item 1 at 7. He has been detained by DHS since June 7, 2018— nearly eighteen months. But this Court cannot say that detention that long violates due process. *See Sanusi v. I.N.S.*, 100 F. App'x 49, 51 (2d Cir. 2004) (summary order) (determining that six-year detention did not violate due process). Indeed, the detention of aliens whose presence in the United States is unlawful may serve the government's compelling interests in both "preser[ving] the government's ability to later carry out its broader responsibilities over immigration matters," *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991), and preventing crime by arrestees who pose a danger to the safety of the community, *see Salerno*, 481 U.S. at 749. And the detention of arriving

aliens under section 1225 may serve the government's compelling interest in managing who may enter the United States. See *Zadvydas*, 533 U.S. at 693. There comes a time when the length of an alien's detention pending removal violates due process regardless of the procedural protections afforded, see *Salerno*, 481 U.S. at 747 n.4, but that time has not yet come here.

### B.   Procedural Due Process[2]

Singh also challenges the procedural safeguards that apply to his continued detention. Docket Item 1 at 18-19. The Due Process Clause is not offended by the mandatory detention of aliens—even lawful permanent resident aliens—for the "*brief period necessary* for their removal proceedings." *Demore v. Kim*, 538 U.S. 510, 513 (2003) (emphasis added). But due process may be implicated if that "continued detention bec[omes] unreasonable or unjustified." *Id.* at 532 (Kennedy, J., concurring).

For that reason, this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry." *Hemans*, 2019 WL 955353, at *5.[3]  "A[t] the first step, the Court considers whether the alien's detention has been unreasonably

---

[2] The government argues that this Court should dismiss Singh's petition for failure to exhaust administrative remedies. See Docket Item 4 at 7-10. This Court disagrees. "[E]xhaustion is excused here because any administrative appeal would have been futile and unable to address [the alien's] substantial constitutional claims." *Joseph v. Decker*, 2018 WL 6075067, at *6 (S.D.N.Y. Nov. 21, 2018). Because the BIA lacks jurisdiction to adjudicate the constitutionality of the process given to Singh, see *Hechavarria v. Sessions*, 2018 WL 5776421, at *7 (W.D.N.Y. Nov. 2, 2018), requiring Singh to appeal his bond determination to the BIA would be futile.

[3] See also *Rosado Valerio v. Barr*, 2019 WL 3017412, at *3 (W.D.N.Y. July 10, 2019); *Fallatah v. Barr*, 2019 WL 2569592, at *3 (W.D.N.Y. June 21, 2019); *Campbell v. Barr*, 2019 WL 2106387, at *4 (W.D.N.Y. May 14, 2019); *Sankara v. Barr*, 2019 WL 1922069, at *6 (W.D.N.Y. Apr. 30, 2019); *Fremont v. Barr*, 2019 WL 1471006, at *4 (W.D.N.Y. Apr. 3, 2019); *Hechavarria*, 2018 WL 5776421, at *9.

prolonged." *Id.* "If it has not, then there is no procedural due process violation." *Id.* "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process.'" *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). If the government has not provided the procedural safeguards that are due, then the alien's continued detention violates the Fifth Amendment. *Id.*

In this case, even assuming that Singh's detention is unreasonably prolonged, the government has not violated his procedural due process rights. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.* at 335, namely: "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake," *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017). Here, that analysis leads to the conclusion that Singh's due process rights have not been violated because he already has received a section 1226(a) bond hearing, *see* Docket Item 3-2 at 9.

### A. The Private Interest Affected

Singh's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity." *Addington v. Texas*, 441 U.S. 418, 427 (1979). Singh has an obvious interest in his "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint." *Zadvydas*, 533 U.S. at 690. But other than referring to a "family friend and relatives" who are United States citizens and who have offered Singh a place to live, Singh's petition provides

9

little information about any ties to the United States that strengthen his interest in being free from detention in this country as opposed to being free from detention elsewhere. *Cf. Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (finding that losing "the right to rejoin [one's] immediate family [is] a right that ranks high among the interests of the individual"). And because Singh was in the United States for at most one day before Customs and Border Patrol agents found him, he is someone "who has entered the country clandestinely, and who has been here for too brief a period to have become, in any real sense, a part of our population, before his right to remain [was] disputed." *See Yamataya v. Fisher*, 189 U.S. 86, 100 (1903).

Nevertheless, because of Singh's *pro se* status, and because "[t]his Court has come to believe that no rational person would subject himself or herself to unreasonably prolonged detention in a jail-like detention facility unless that person's liberty interests in remaining in the United States are quite strong," *Joseph v. Barr*, 2019 WL 3842359, at *8 (W.D.N.Y. Aug. 15, 2019) (quoting *Fremont*, 2019 WL 1471006, at *6 n.7), the Court presumes that Singh has a substantial interest in release from detention in the United States. And that interest is elevated given Singh's claims of persecution in his home country of India.

### B. The Government's Interests at Stake

The government may have several compelling interests in detaining Singh. First, Singh's release into the United States would implicate the authority of the government to manage who may enter the country. Furthermore, the government's interests in preventing flight or protecting against a danger to the community may be served by detaining Singh. This Court addresses each of these interests in turn.

### 1. The Government's Interest in Controlling Admission to the United States

The federal government has a strong general interest in controlling admission into the United States. *See Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quoting *Oceanic Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)) ("'[O]ver no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens."). Moreover, that interest is heightened in cases such as this where the detainee has never been admitted into the country. *See Zadvydas*, 533 U.S. at 693 (explaining that there is a "distinction between an alien who has effected an entry into the United States and one who has never entered"). After all, if release from physical confinement means that noncitizens who have never "entered" our country "be released into American society," *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 394 (3d Cir. 1999) (quoting *Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1448 (9th Cir. 1995)), release may "ultimately result in our losing control over our borders," *id.* (quoting *Jean v. Nelson*, 727 F.2d 957, 975 (11th Cir. 1984)). Therefore, the nature of the process due "may vary depending upon [a noncitizen's] status and circumstance." *Zadvydas*, 533 U.S. at 694.

Singh was spotted along the border within a day of entering the United States. Docket Item 3-2 at 2. He thus is someone "who has entered the country clandestinely, and who has been here for too brief a period to have become, in any real sense, a part of our population, before his right to remain [was] disputed." *See Yamataya*, 189 U.S. at 100. Stated another way, Singh was "merely on the threshold of initial entry" when he was first detained. *See United States ex rel. Kordic v. Esperdy*, 386 F.2d 232, 235 (2d Cir. 1967) (quoting *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958)). Therefore, the government continues to maintain a strong interest in controlling Singh's admission

11

to this country; in fact, the government has a heightened interest that is quite similar to that when it detains someone at a port-of-entry.

### 2. The Government's Other Interests in Detention

The government may have other strong interests in Singh's detention. "The government's interest in preventing crime by arrestees is both legitimate and compelling." *Salerno*, 481 U.S. at 749. And general concerns about the risk of flight highlight the government's compelling interest in preserving its "ability to later carry out its broader responsibilities over immigration matters." *Doherty*, 943 F.2d at 211.

### C. The Risk of Erroneous Deprivation of Singh's Interests Through the Procedures Used

There is indeed a risk of erroneous deprivation of Singh's liberty interests from the procedures used thus far. Singh did receive an individualized custody hearing before an IJ, *see* Docket Item 3-2 at 9, but that hearing tilted the balance in the government's favor. Under the applicable regulations, "[a]n alien who seeks a change in custody status must establish to the satisfaction of the Immigration Judge and the [BIA] that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk.'" *Matter of Hussam Fatahi*, 26 I & N Dec. 791, 793 (BIA 2016) (quoting *Matter of Guerra*, 24 I & N 37, 40 (BIA 2006)). So even when the government has no evidence supporting continued detention, the alien will remain detained unless he meets his burden. What is more, a detained alien—especially one proceeding *pro se*—likely will have an extraordinarily difficult time obtaining evidence that might demonstrate that he is not a flight risk or a danger.

12

The fact that the burden of proof is simply "to the satisfaction of the Immigration Judge"—as opposed to a more traditional, defined standard such as by clear and convincing evidence—increases the likelihood of arbitrary decision-making. What satisfies one IJ might not satisfy another. And even if evidentiary burdens can be fickle from a legal-realist perspective, at least they reflect an attempt to remove some arbitrariness from consideration of the evidence. The standard of proof in section 1226(a) bond hearings, on the other hand, makes no such attempt.

## D. Balancing the Competing Interests at Stake

"[T]the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "[N]ot all situations calling for procedural safeguards call for the same kind of procedure." *Id.* "[A] balancing of the competing interests at stake" and a comparison to similar cases dictate the appropriate process due. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

There is no doubt that both Singh's and the government's interests are strong. But set against each other, the government's interests in continued detention outweigh the risk that the procedures used thus far might erroneously deprive Singh of his liberty in the United States. This Court has recently balanced similar competing interests for an entering alien and determined that the dictates of procedural due process require a searching and periodic "'rigorous review of [the alien's] eligibility for' release" based on individualized findings. *Clerveaux v. Searls*, 2019 WL 3457105, at *16 (W.D.N.Y. July 31, 2019) (quoting *Chi Thon Ngo*, 192 F.3d at 399). At least at this point in Singh's detention, this Court cannot say that his section 1226(a) bond hearing was a facially invalid process for meeting that standard. Therefore, Singh was provided an

13

appropriately "meaningful opportunity to invoke the discretion of the decisionmaker," *Laudermill*, 470 U.S. at 543, and his procedural due process claim fails.

## IV. EXCESSIVE BAIL CLAUSE

Finally, Singh argues that the "government's categorical denial of bail to certain non-citizens violates the right to bail encompassed by the Eight[h] Amendment." Docket Item 1 at 19. For the reasons that follow, Singh lacks standing to raise this claim.

"An important component of the Article III jurisdictional limit of federal courts to deciding 'cases' or 'controversies' is standing." *All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006). To establish standing, the party must allege (1) an "injury in fact," (2) "a causal connection between the injury and the conduct complained of"; and (3) a likelihood "that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 503 U.S. 555, 560 (1992) (citations omitted). In this case, Singh's injury—the denial of his liberty—does not bear "a causal connection" to "the conduct complained of." *Id*.

Singh does not deny that he received a bond hearing where an IJ denied bail based on individualized findings. Therefore, regardless of whether he is correct in his claim that the "government's categorical denial of bail to certain non-citizens violates the right to bail encompassed by the Eighth Amendment," Docket Item 1 at 19, the government did not categorically deny *him* bail. Rather, the government denied Singh bail based on individualized findings at a bond hearing. Therefore, Singh's injury lacks a causal connection to the conduct about which he complains, and he lacks standing to bring this claim.

14

## CONCLUSION

At nearly eighteen months, Singh's detention is likely unreasonably prolonged. This Court therefore expects that Singh "will receive searching periodic" and "rigorous review[s] of his eligibility" for release from detention to ensure that he remains free from prolonged arbitrary imprisonment. *Chi Thon Ngo*, 192 F.3d at 399. And the longer Singh is detained, the more rigorous those reviews should be. If Singh does not receive the reviews to which he is entitled, he may again seek relief. But for the foregoing reasons, the specific claims raised in Singh's petition for a writ of habeas corpus are denied.

SO ORDERED.

Dated:  December 3, 2019
        Buffalo, New York

LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE